I suppose the right counsel are in place. I'll call the third case for the day, Unincorporated, etc. v. City of San Antonio and Crosspoint. Mr. Crist. We were mispronouncing a lot of things in the previous case. Did I get your name right? You did, Your Honor. William Crist. At least for this morning. You'll go with it, huh? Yes. William Crist for the Unincorporated Non-Profit Association of Concerned Eastside Citizens and Homeowners. Judges, we believe that the trial court erred in finding that the special use authorization was severable from the base zoning designation contained in the ordinance relevant to this case. The district court found that a general severability provision contained in the San Antonio City Code at Section 1.17 would in fact authorize severance in this case. As we've argued in the brief, we believe that the applicability section of the San Antonio City Code at Section 1.3A11, which states nothing in this code or ordinance adopting this code shall affect any ordinance dealing with zoning, would in fact exclude the applicability of the general severability provision found at Section 1.17 of the San Antonio City Code. Appellees have argued that that interpretation is incorrect for various reasons. In essence, what they argue is that the reference to dealing with zoning at A11 of Section 1.3 only deals with previously adopted zoning. Well, let me ask, if that's their response, is this a new issue raised on appeal or did you discuss with the district judge whether the severability clause even applies to zoning? We argued generally, Your Honor, that it would be inappropriate to sever the special use authorization. But as far as a categorical inapplicability of the severability clause, you did not argue that, did you? We did not, Your Honor. Again, we believe that this court's review of the law is going to be de novo on the issue and that ultimately this court has the authority to determine whether or not that particular section of the code does in fact prohibit the applicability of Section 1.17. Well, neither one of you mentioned the severability clause that actually appears in Chapter 5. I'm not myself trying to raise a new issue on appeal, but if there's some reason that you think it's irrelevant and that's why you didn't mention it. But Chapter 35 itself says, if for any reason any section of whatever is held invalid, judgment shall not affect other sections of this chapter. I believe you're referring to the UDC, Your Honor. I am referring, I don't know about your abbreviation, but it's Chapter 35-110. Yes, Your Honor. I think that our response to that, the reason that it wasn't raised by us is we don't believe that it's applicable to this particular ordinance. And the reason for that is this. The section you're referring to is entitled severability of chapter, Your Honor. The ordinance that's at issue here that we're challenging is not actually a part of the chapter of the Uniform Development Code. It amends Chapter 35 of the Development Code, but it itself does not become part of the code. And so our argument would be that its application would be inapplicable in this situation. And again, our challenge is to the ordinance itself, not to the amendment to the code. As it relates to the city code, when we look at Apelli's arguments as to why it only applies to preexisting ordinances, part of what they've said is we need to direct you to another section of 1.3. We want you to look at A16. And what A16 does is it says all ordinances in effect upon the effective date of this code not inconsistent. And so here we can see that the city council was clearly able to distinguish between preexisting ordinances and other ordinances. If we are to accept the city's argument that A11 only applies to preexisting zoning, then we have to wonder why is there an A11 at all? A16 specifically deals with preexisting zoning. And so we believe for the court to determine that A11 only deals with preexisting zoning would violate what are the cardinal rules and basic rules of statutory construction because it would be rendered meaningless. It talks about dealing with zoning. It doesn't talk about whether that be preexisting or prospective. But another section of the very code speaks about preexisting zoning. And so if we're to adopt the city's argument that this only applies to preexisting zoning, then that would render A11 simply superfluous and meaningless. And we believe that that would be an improper result. Even assuming in this particular case that a particular severability provision controls or whether the Texas Code Construction Act, which is codified under Texas Government Code Chapter 311, applies, that Texas state law would only require severance if provisions can be given effect without the invalid provision. And we think that the state law is fairly clear. In essence, the Texas Code Construction Act codified in Chapter 311 of the Texas Government Code is very similar to what the Texas state common law standard is to determine whether severability is appropriate in a particular situation. And I think the important part of the Texas Government Code here is whether or not if other provisions can be given effect without the invalid provision. And in this case it could not. And not only could it not be given effect, it would have been a legal impossibility at the time. And the reason for that is that the way that the use matrix was set up for zoning in the city of San Antonio was that in order to even be considered for a special use authorization for a transitional home or correctional facility like the one here, you first had to demonstrate to the city that you had the requisite base zoning. And that base zoning at the time was C-3. So the city council could not have even considered the issue of a grant of a special use authorization without first determining that the subject property had the requisite base zoning, which again was C-3 in this case. And so even if the court assumes that a severability provision applies, whether it be a strict severability standard or whether it be the Texas Code Construction Act, ultimately to find that the special use authorization is severable from the base designation, this court would in essence be determining, that result would, the court would ultimately have to determine that the legislature intended to do something that was not legally possible at the time. If Crosspoint or whoever had come in to rezone the property had come in and simply asked for a special use authorization with a base zoning of MF-33, that special use authorization request would in essence be a nullity because we don't have the requisite base zoning to even grant that authorization. And we believe that when we talk about legislative intent, which is always of paramount importance in determining whether or not a severability provision should be upheld, or whether certain provisions should be severed from those that are found unconstitutional or impermissible, when we talk about intent, we're talking about intent of the legislature at the time that the legislation was promulgated, not at some indefinite period in the future. Appellee is going to get up here and say, well look, they intended to do this particular piece of property and now they could have done that. But that's not the inquiry for this court. In determining what the legislature's intent was, the inquiry for this court is, what was their intent at the time that they promulgated this statute back in September of 2009? Not what might have happened down the road. And so because this was a legal impossibility, it would have been a legal impossibility for the city council to have granted the special use authorization without first finding that a base designation of C-3 would have been appropriate for this property. We believe that if this court severs the special use authorization from the base designation, it's in essence legislative judicial lawmaking in the sense that the city council now doesn't get the opportunity to determine whether or not it would be appropriate to grant a special use authorization knowing that the property couldn't be properly designated C-3. And I think... So let me ask, are you planning to give any time to the intervention issue? Mr. Chaudhry, I believe, Your Honor, is... Is that how you're breaking it up? Okay. Yes. You were on track and I derailed you. That's okay, Your Honor. That's okay. I think at the heart of the argument, Your Honor, is the city... Here's the question. Could the city have intended, by virtue of the inclusion of a severability provision, to allow an application of that severability provision that would have accomplished that which was not legally capable of accomplishment at the time? Thank you. Thank you. May it please the Court, Sean Chaudhry for the Unincorporated Nonprofit Association of Eastside Citizens. Your Honor, I'm here to speak today about the intervention section of our brief. We believe that the district court erred in granting Crosspoint's intervention. The crux of intervention under Rule 24 is timeliness. Isn't really Crosspoint the party affected here? If the zoning goes away and they can't operate this facility, they've been operating for five years. I mean, I don't even understand how you could have this case without them in it. So it's... I'm just... Yeah, it should have happened sooner, arguably. But I'm just struggling with how this case really has any meaning if Crosspoint isn't bound by it. And it would seem like you would be the one arguing for Crosspoint to be in it. Well, Your Honor, I respectfully disagree. The city of San Antonio is the only entity that has any authority to bind a property's zoning classification. No, I know that, but it kind of doesn't matter to San Antonio how it comes out. It matters to Crosspoint. They're the ones that are operating this facility and have been for five years. It would suddenly go away if you all were right. Absolutely, Your Honor. And so how can you... how can your... any decision in this case have any meaning if they're not in the case? Your Honor, I don't even think we get that far. The issue... the primary issue and the crux is always timeliness. The United States Supreme Court says you don't even get to the other part of the analysis without looking at timeliness. But I'm saying this is rectifying a wrong that was in... that the case was proceeding on without a very necessary and perhaps indispensable party. And so maybe it took a while to get there, but we righted the wrong. Why would we now unright the wrong or reinstate the wrong? Your Honor, they were a party to this suit, and that's the oddity in this case. Within a couple of days of filing this very lawsuit at the state district court level, they intervened into the lawsuit. There was a temporary injunction hearing that the plaintiffs were not successful in maintaining the TRO. Subsequent to that, they left. They knew at that time that the plaintiff appellant was seeking to find that the ordinance was unlawful and to stop the operation of the facility. They did it. They left the litigation the day before it was removed to federal court. They were represented by counsel. They knew of the exact situation which was going on, that this group was unhappy with the operation of the facility and the base zoning and that they sought to attack it. Just because an interlocutory order granting temporary relief pending trial was not granted is not a final judgment, does not mean that further claims will be amended, and that is the matter. They knew or should have known for over 20 months. But I still – I mean, to me, they shouldn't have been allowed to be non-suited or they should have been brought back in sooner. I guess I'm just not understanding why the solution here is to exclude a party that clearly should be here. Well, the problem is it's clearly a tactical issue for them. They had the group – when the base zoning was applied for, they had the Sisters of the Holy Spirit apply for the zoning. It wasn't the correctional facility. And they let the city of San Antonio litigate this case until there was a summary judgment. And then they decided to get back in and spend resources and stop letting other people fight their battles for them. Any harm that they would suffer is self-harm. And it is very clear through the jurisprudence that self-harm is viewed very differently than harm that is innocent. They knew or should have known about the pending claims and the loss of the zoning at the time that the lawsuit was filed. Within two days, they joined the lawsuit. I think that's clear. Counsel, even under the analysis for timeliness, among the rules seems to be in situations in which intervention is of right. In those situations, and the would-be intervener may be seriously harmed if intervention is denied, court should be reluctant to dismiss even when untimely. I mean, we have all these to weigh. What's your best case that this timeliness here in a situation like this should cause us to set aside the district court's ruling? Pardon your? What's your best case for the position that you're taking that the delay by cross point here should cause us to set aside the intervention? As far as the specific case law? Yeah. What case? What precedent from this Fifth Circuit or otherwise? The precedent cited in the brief specifically, I believe, was R&G Mortgage in the matter of oil antitrust. Specifically, the courts have viewed self-harm differently than innocence. And in leaving a pending lawsuit while represented by counsel and knowing of the possibility that their interests would be harmed was a calculated decision made by the intervener. Let me give you an extra minute. You were a little late getting to your argument. So you have 60 seconds to say whatever we didn't let you say earlier. And if you've said it, I'm not asking you. No, I think that it's a four-part analysis, and you really have to be letting a party in after it's already been adjudicated, and they've let another party fight for them for 20 months. It's like coming back and having Oklahoma play a game against Villanova again after they just won the Final Four. It's not saying that there was a final judgment at that point, but significant time and resources had been spent, especially when a plaintiff group is comprised of individuals of ordinary means, and this is an attrition tactic. So to jump in and out of litigation. They just made a shot at the buzzer, and that counts, doesn't it? Well, understood, but then the team that took third place can't come back in and play against the team that won. So the essence is that allowing Crosspoint to intervene would set precedent to allow interveners to jump in and out of litigation and basically allow attrition against plaintiffs. Understood, counsel. Thank you. Thank you. We'll hear from the intervener, I suppose. Yes, may it please the Court. Let me begin by addressing the intervention point because that's where we ended the opening argument, and just as a matter of fact, the timing of things is it's true Crosspoint intervened in the state court suit. At the time Crosspoint intervened in the state court suit, the property had not closed. So Crosspoint was considering purchasing this property. The zoning, the purchase was contingent on what happened with the zoning case. Crosspoint intervened in the suit to argue for the allowance of the zoning to pass and for the city to be able to enforce the zoning. When that occurred, Crosspoint could then close, and it did close, and it began what needed to be done to make the millions of dollars in investments and to go into business as a transitional home at this property. At that point, Crosspoint was satisfied. Why leave a case that could come back to bite you? There are a lot of reasons why you wouldn't want to be involved in a case if you were satisfied that you were already up and running. I think the Court's point is a good one, that a party should, if their interest might be at stake, use some degree of diligence to ensure that their interests are protected. But the case was very different when Crosspoint non-suited than when the whole issue about spot zoning and whether or not Crosspoint could operate in that location was brought up. That was brought up months after the non-suit. So Crosspoint got out of the case. When you got out of the case, what did you think was left for the city and the unincorporated people to argue about? What did you think they were going to argue about that didn't impact Crosspoint? Well, the request at the time of the non-suit, the pleading at the time of the non-suit said, Plaintiffs request a declaratory judgment determining the respective rights and validity of the zoning ordinance as requested. So they were essentially seeking declaratory relief about what the zoning ordinance would mean. So at the time of the non-suit, that was the relief being requested. Then the case gets removed to federal court. Once the case is in federal court, they then amend their petition and they ask for a declaration that the zoning ordinance be invalidated but that it be declared spot zoning and that everything revert back to how it was. Your Honor. Let me ask you this. At that point then, did your client become an indispensable party? In my opinion, it did become an indispensable party. Explain why. Because it was its interests that were at stake. It was its operations that were at stake. So they did endeavor to bring you back in, is your argument? Yes. At the time they amended their complaint, they should have brought Crosspoint back in, which means it didn't matter whether or not Crosspoint intervened. In fact, Crosspoint did a favor to the parties by intervening. Okay. So does the timeliness issue turn on whether really the party's an indispensable party anyway, the party that's seeking to intervene? Does that turn on, but does that have an impact? Is that part of the analysis of the timeliness? If Crosspoint's an indispensable party, then timeliness doesn't really matter. Crosspoint is a necessary party for the parties who are in the case to get relief. No judgment would be binding upon Crosspoint in that instance. You certainly convinced the trial judge to allow the intervention, reopen discovery, and off we go in a way, perhaps in a new direction. Were you participating at that time? How was this presented to the district judge? Were these arguments presented at that time where the judge appreciated or at least was told about the effect on Crosspoint and the need to pursue this additional discovery? I mean, that was all presented to the district judge in the way that you're talking to us now. Yes, Your Honor. It was specifically presented. It's all in the record. At the time of the intervention, we attached affidavits. By that time, Crosspoint had been up and in operation for a year, and so the judge had all of that in front of him. Not the best fit for the four factors of intervention is the concern. It has a lot of other ingredients to it that you may have argued to the district judge, but the timeliness is actually something of a hurdle under intervention law, but it is what it is, and we will deal with it. Do you have anything else to say about timeliness? Specifically, not the importance of you being in this lawsuit, but just the case law that makes timeliness a fairly significant factor in this case. It had gotten close to resolution when you got back into it, resolution perhaps a direction you didn't like, which is why you got back into it. I agree, Your Honor. I would say just two things very quickly. At the time of the non-suit, it was not clear that the lawsuit was going to take the direction that it in fact took, where we're talking about this spot zoning and unconstitutionality of the statute. It was a lawsuit to interpret a statute at the time of the non-suit. The reason for getting back into the lawsuit was the press that occurred after the magistrate judge endorsed the plaintiff's position that this was spot zoning, and at that point, cross points operations were threatened, and that's frankly when I was called and said, will you intervene? With respect to the rest of the case, Your Honor . . . What I asked you to address is specifically the factor of timeliness. You're telling us how indispensable you were, necessary and indispensable, but address the factor that we will have to address in discussing whether the district judge . . . how would you deal with timeliness? The question is timeliness beginning from when in the first instance. At the time of the initial non-suit, the case was not what it was when we got notice of the magistrate judge's recommendation through the media. So you're saying that's the first you knew of the spot zoning issues when your client read it in the paper? That's correct, Your Honor. Then they acted very promptly after that? Exactly. Okay, so you're saying that's the timeliness analysis Judge Southwick's asking for is from what date, and it's from when you knew that this spot zoning issue that you cared about existed, which it didn't when you got out the first time? That's right. Okay. The plaintiff's position would be that the initiation of the lawsuit is the beginning of the timely notice. My response to that would be at that point, it wasn't the same lawsuit in which we intervened months later after the plaintiff amended their complaint and failed at that time to join Crosspoint as an indispensable party. Why don't you give us what else you have? So the lawsuit, Your Honor, is not, let's be very clear, the citizens aren't complaining about the zoning structure that the City of San Antonio has implemented. They're complaining about a halfway house being in their neighborhood. And so all of the issues in the case can be resolved by considering whether or not the statute is severable and whether or not these issues are all moot. The statute is definitely severable. The City of San Antonio and the citizens of the City of San Antonio had an opportunity to debate not whether or not the zoning, the base zoning should be C-3 or some other zoning category, but whether or not there should be a halfway house, a transitional home in that neighborhood. That was specifically considered by City Council. It was specifically considered by the parties. And it was the Council, in their discretion, deliberated and granted a specific use authorization for that purpose. Let me ask you this. If we agreed that it was severable and therefore that the zoning decision of the court was proper, does it make any difference what we rule on the intervention? I mean, you can't really unring the bell of what's happened in terms of the judge now has heard your arguments and made rulings and all of that. So if those rulings are correct, does it matter whether you made the argument or the City of San Antonio made the argument? I really don't see how it can. I struggle with the relief that the plaintiffs are entitled to here, even if they're correct that the intervention was improper. It's done. There was no attempt to, and I'm not sure that the plaintiffs had an appellate remedy, but there was no attempt to undo that, the granting of the intervention when it occurred. And so the cross point was a party, presented its arguments, and if the court is right, then the fact of the intervention is now totally moot. In addition to the fact that if the statute is severable and we have the specific authorization to run exactly the operation that is there, in that event, whether or not the C-3 zoning, the move to C-3 was improper, is irrelevant because we'll have the specific authorization. And if it's not severable and we should send it back for a new trial, as they argue, then shouldn't you be there for that new trial? Definitely we should be there for the new trial if we were to go back. So we're back in the circle, Your Honor. Well, what is the right way to consider the validity of severance under the San Antonio City Code? We've heard several different severance sections quoted to us. How would you analyze that? Your Honor, we were... Unless that's San Antonio's portion of the argument. I don't want to get ahead of however you divided this. San Antonio, the city, is in a better position to address that. That's right. If you don't have anything else, you don't have to keep arguing. I don't, Your Honor. Unless you have any other questions, I'd be happy to answer. Thank you, Counsel. Thank you. Thanks for the four minutes. I have four minutes? No, you get your five. Good morning. May it please the Court. My name is Fred Jones, and I represent the city of San Antonio in this case. And I'll be happy to start where we've been going the last few minutes just for the next 45 seconds or so. The intervention was after Magistrate Promomo made his recommendations. It was after the press... Wasn't that issue in play for a while? I don't know when the motions were filed, when the idea of spot zoning first appeared. It wasn't just when the newspaper picked up on it. Nobody reads newspapers. Just when the other media picked up on it. You're right. You read the paper, excuse me. So, wasn't it several months before that? I mean, delay had been considerable, it seems to me, prior to the magistrate announcing what was going to happen. Yes, Your Honor. At the time that the case was removed to federal court, what we had was due process and equal protection. And when I say we, I was not in the case at that time. Because like Crosspoint, I didn't come to the dance until after the recommendations came down from the magistrate. Nobody thought this thing had any legs until the magistrate said it did, and then everybody started dancing. You're right, Judge. Because we ultimately won on procedural due process, substantive due process, equal protection. All of those we won on, clearly. Even the magistrate recommended that we win on those issues, except for how substantive due process segues into spot zoning. Let's not spend much time on this. Let's talk about what is your section of this, since we probably are not going to set aside the intervention and ask the district judge, do it all over again, without us ever getting to the merits, without Crosspoint being involved. Okay, Your Honor. Your Honor, there's no question that this property is historic. It's unique. In 1922, when the sisters started this operation, there was no zoning in San Antonio. I'm holding the entire code and charter of the 1922 City of San Antonio Code. If you look in the table of contents, there is nothing about zoning. If you look at the index, nothing about zoning. The City of San Antonio did not adopt zoning until 1938. One of the cases, aside from FM Properties and the Shelton case that deal with substantive due process, and I'll get to severability very quickly, Judge, but I want to set the stage for this. FM Properties and Shelton both have been cited many, many times. I believe FM Properties was 91 times. It goes back, really, I find a lot of joy in this profession, to the extent we have joy, in looking back. If you look back at what started this all, what started us down this almost 100-year odyssey of dealing with land use questions and property rights and how they intersect and how you decide them, you go back to Ambler, City of Euclid v. Ambler, 1926, and that was a 6-3 decision even then. But who was on the majority? We have Brandeis, we have Holmes, we have Justice Sutherland that wrote the opinion. So that set the stage, and really, in that case, they said, you cannot be a super legislature. You cannot undertake to undo the democratic process. And what we had here, I don't know, I'm sure your law clerks have listened to it and watched it, the DVD. Very animated public participation in this hearing for over three hours. It was a 9-2 city council vote. Democracy at its best. So now, getting to severability. Your Honor, I'm sorry. The severability argument was not well developed by the plaintiff in the district court. We pointed out on appeal that they've made some new arguments. I did not cite the section that you cited. Believe me, Chapter 35 is not like this anymore. But we believe that the section that we did cite, which is 117, provides ample support for severability. This finding of a special use authorization can stand on its own. So what would be the point of dealing with the zoning issue at this point? We do not believe spot zoning even exists under Texas law anymore. But that's not for this court to decide. I'm out of time. I'll be happy to answer any questions. Well, we have you briefed. Thank you, counsel. Thank you, Your Honor. May it please the court. I just briefly wanted to talk a little bit about the intervention. Cross points indicated that they didn't know that their interests, in essence, were at jeopardy until such time as we brought a spot zoning claim. That said, however, the temporary restraining order that precipitated the temporary injunction in this case, of which cross points was at the hearing and was represented at that hearing, the temporary restraining order itself states, Petitioner, the Unincorporated Nonprofit Association of Concerned Eastside Citizens and Property Owners, and its members are affected by City Ordinance 2009-09-17-0758, which appellants intend to show is unlawful. And the actual relief granted by the temporary restraining order itself, judges, was to prohibit cross points from operating during the pendency of the case. Do you have an answer for the – I'm struggling to figure out what difference the intervention ruling makes if you lose on severability or you win on severability because you can't go back and say, well, we're going to make the district court decide this case but not look at any of the law that cross points cited and only look at the law San Antonio cited? Like it doesn't – I mean, to me it makes no sense in a way because I don't really know how we can unring the bell. I agree, Your Honor. It almost seems like a practical impossibility. I don't disagree with that. But the question is whether it was timely. And again, this is self-inflicted. No, what I'm saying is what difference does it make if we rule against you on severability but we throw cross point out, they still get to go operate their halfway house. Correct. If we rule for you on severability and you go back for a trial, then you're going to have to join cross point because you want them bound to that. So I guess I don't even understand what difference it makes. I suppose it may be a win. I think if the court rules against us on the severability issue, all of our claims are gone. I mean, our claims are moot and all of the issues at that point would be gone. I don't – I agree with you, Your Honor. I was unable to find a case where an appellant who argued that the grant of an intervention was improper and what the particular remedy would or should be at that point. But, again, to get back to the difference between the claim and the relief, the relief we requested at the time was known by cross points. They were in the very lawsuit. And so for them to come here and say, well, no, it wasn't until that you actually brought your spot zoning claim that we knew that our operations were at jeopardy is disingenuous. If I could, let me ask it this way. In your prayer, you say the district court's grant of summary judgment on appellant's claim for spot zoning should be reversed and remanded for trial on the merits. If we were to do that, would you agree that cross point ought to be part of that case? We argued against their intervention at the trial court, Your Honor, and I would make those same arguments again. So my answer would be no. So if you went to trial and the court found the spot zoning unconstitutional and all that, is cross point bound to that if we throw them out? Absolutely. How can we throw them out if they're going to be bound? Well, they have no right to the zoning, Your Honor. I mean zoning is a function solely of the city. Cross point has no right to its current zoning. The city could come in and change the zoning tomorrow and they would have no argument. Believe me, they'd have argument. Well, I mean they might have argument, Your Honor, but the question would be do they have some right to the zoning, and they don't. They simply have no right to that zoning classification, that zoning designation, or to a particular use of their piece of property, nor does anybody else. It's ultimately the city who determines that, not cross points. So would they not be able to operate? Yes. They wouldn't be able to operate if the city came in and changed the zoning or, for instance, pulled their specific use authorization. And might they have a claim concerning that? I suppose they may. Got something else? Severability? Yes, yes. I would just say on severability, again, as the Geisling Court makes clear, there's a presumption that the city council intended to act, or that a just and reasonable result was intended. And, again, in this particular case, you couldn't have the special use authorization without the base zoning. It's not just nor reasonable. It's impossible. Not only that, Geisling also makes clear that the city council also acted with knowledge of the law. And so, in essence, to buy the city's argument, or to buy cross points' argument, the court has to determine that the city intended to impermissibly zone the property C3. And, again, such a result is in conflict with those basic tenants that the city council or legislative body acts with knowledge of the law and a just and reasonable result intended. Thank you. All right, counsel. Thank you. Thank you both. Both sides.